RASBERRY *v.* CALHOUN COUNTY, MISS.

No. 40473 April 22, 1957 94 So. 2d 612

*Kermit R. Cofer,* Water Valley, for appellant.

*Paul M. Moore,* Calhoun City; *W. V. Byars,* Bruce, for appellee.

ETHRIDGE, J.

This is an appeal by a landowner, R. E. Rasberry, Sr., from an award of $250 to him for the taking in eminent domain proceedings by Calhoun County, appellee, of a strip of land through his property for a public highway.

This cause originated in a Special Court of Eminent Domain, where the jury returned a verdict for $250. Code of 1942, Sections 2749-2762. The defendant Rasberry appealed to the circuit court under Code Section 2766, where a trial de novo before another jury resulted in a verdict and judgment for Rasberry in the same amount, $250.

Appellant first contends that the verdict is contrary to the law and evidence, and is so small as to evince bias and prejudice by the jury. The land is a seventy acre tract in the northwest part of Calhoun County. The right of way condemned by the County for the public highway enters this tract at its southeast corner and leaves it near its northwest corner, traversing a distance of 1,368.8 feet. The right of way is 170 feet wide for a distance of 104.8 feet at the southeast end, and 150 feet wide for the remaining distance of 1,264 feet. The area included in the right of way and taken by eminent domain contains 4.77 acres. The right of way cuts diagonally through these 70 acres, from southeast to northwest, and divides the remaining 65.23 acres into two tracts almost equal in size.

The land does not touch upon any public road. To reach it one must walk about one-quarter mile from a public road across property of others. Appellant lives in Calhoun City. He testified that he had used the land some years for pasture and rented it out some for farm land, but the last time any of it was cultivated was in 1948. He then put it back in pasture and used it for that purpose through 1951. Since then he has not used it for pasture. The property is mostly hills and gullies,

although in the southwest part there are from 9 to 20 acres of cultivatable land, all of which is west of the highway right of way. Witnesses for the County and for Rasberry differ as to what timber was on the right of way when it was cleared by the County after the judgment of the Special Court of Eminent Domain. Witnesses for the County said that it contained no marketable timber. On the other hand, appellant and his witnesses testified that there were 758 trees, none under 3 inches in diameter, on the right of way before it was cleared; and, in effect, that although somewhat small, the timber on the right of way had some value.

The land had no improvements on it. To the east of the right of way was a spring of fresh water. Appellant argued that a culvert proposed to be placed under the highway would drain the spring water off of his land and onto that of the owner to the south. Witnesses for both parties agreed that the principal value of the land was for raising timber. The County offered three competent witnesses who testified concerning the market value of appellant's land before and after the taking. One stated that the market value before taking was $1,750, and after taking $1,600, being damages of $150. Two others estimated the before taking market value at $2,300, and after taking, $2,100, being damages of $200. They valued the land at approximately $25 to $32 per acre, although one of the County's witnesses stated that the farmland, the small acreage west of the right of way, should be valued at $50 an acre and the remainder at $30. He averaged the per acre value at $40.

On the other hand, appellant estimated the before taking market value at $3,500, and the after value $2,500, being damages of $1,000. His other three witnesses on damages placed the respective figures at $3,500-$2,750, or damges of $750; $3,000 to $3,500, less an after-taking market value of $2,000, or maximum damages of $1,500; and $3,000-$1,500, or damages of $1,500.

In addition to this evidence, the court and jury viewed and inspected the land. Considering the evidence, the jury's right to accept the testimony of witnesses for the County, and the fact that the jury viewed the land, we cannot say that the verdict was so small as to evince passion and prejudice or to be shocking to the enlightened conscience. Neither the trial court nor this Court can substitute its judgment for that of the jury in awarding damages. The jury's verdict must stand unless it is plain that it is so excessive or inadequate as to have been brought about by passion or prejudice. State Highway Com. v. Williamson, 181 Miss. 399, 179 So. 736 (1938); City of Jackson v. Landrum, 217 Miss. 10, 63 So. 2d 391 (1953). Tested by this yardstick, it is evident that we would not be justified in setting aside the verdict of the jury, even though, if we had been triers of fact, we would have awarded a somewhat larger sum. But here two separate juries have awarded the same amount, based upon the testimony, their view and inspection of the land, and the surrounding conditions, and the learned circuit judge, who also viewed the land, refused to set aside the verdict as inadequate. For these reasons, and because there is substantial evidence in the record to support the amount of damages awarded appellant, we find no reversible error on appeal in that respect.

Nor was there error in the trial court permitting the jury to view and inspect the land. Appellant complains because after the award in the Special Court of Eminent Domain, the County proceeded to clear most of the right of way and cut the trees off of it, under Code Section 2763. Therefore, he says, when the circuit court jury viewed the land it could not determine its state before the right of way was cleared. However, appellant's witness Edmondson was asked how the timber on the right of way compared with the timber not on it,

and he replied, "It is the same timber." The jury inspected the land including the right of way, and presumably considered that testimony along with other evidence and what they saw. Moreover, Code Section 2770, in the chapter on eminent domain, specifically provides, "Either party to the suit, on application to the court, shall be entitled to have the jury view the property sought to be condemned and its surroundings under the supervision of the judge". This Act gives the party in an eminent domain proceeding a right to have a jury view, in the absence of unusual conditions which in the sound judgment of the trial court would eliminate the value of such a view, and those do not exist here.

 █ Appellant also complains about the circuit court sustaining objections to testimony offered by appellant through three of his witnesses concerning the alleged necessity of fencing each side of the right of way, its cost, and its bearing upon the after-taking market value of the remaining land. Evidence concerning damages for specific injuries to the remaining land is competent if, but not unless, they would affect the market value of the remaining land. State Highway Com. v. Treas, 197 Miss. 670, 675, 20 So. 2d 475 (1945). █ However, it is undisputed that the principal use of appellant's land is for growing timber, and cost of a fence would not be an element relevant to market value in an eminent domain proceeding for timber land. Appellant admitted that he had not used the land for pasture since 1951. He fenced it in 1926, thirty years before the trial. He admitted it was "rundown" and in "bad" condition. Under these circumstances, we do not think this offered evidence was sufficiently connected with the market value of the remaining land to warrant its admissibility. The trial court was correct in sustaining objections to it. It was in the nature of an attempt to develop a separate item of damages not sufficiently related, under the in-

stant facts, to the question of the market value of the remaining land.

██ █ The first instruction granted appellee of which appellant complains advised the jury that the purpose of the view was to enable it to have a more intelligent understanding of the land and of the location of the proposed road, but it did not tell the jury to ignore the testimony; on the contrary, at two points the jury was advised to consider all of the other evidence or testimony along with its observations. And the evidence apart from the view of the land is sufficient to sustain the verdict. Moreover, appellant and appellee were each given other instructions which told the jury that it must decide the case from all of the evidence and according to the evidence adduced on the trial.

██ █ The jury was also instructed for the County "that in arriving at your verdict you shall not consider any elements of inconvenience or other elements which are speculative and remote." This was approved in State Highway Comm. v. Treas, supra. See also 1 Alexander, Mississippi Jury Instructions (1952), Secs. 2172 and 2164. The instruction correctly stated that elements of inconvenience which should not be considered are those which are speculative and remote.

Affirmed.

*McGehee, C. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.