BROOM, Justice:
This is an appeal from the Chancery "Court of Chickasaw County, Mississippi, wherein the appellee, Board of Commissioners of the Chuquatonchee Consolidated Drainage District, by decree dated July 21, 1972, was granted certain easements upon certain lands of the appellants, which lie in the Owl Creek Valley area, for the purpose of constructing dams and impounding waters. We affirm.
The district (Board of Commissioners) was organized by decree of the chancery court dated September 18, 1958, pursuant to Mississippi Code 1942 Annotated sections 4752-01 to 4752-07 (1956) [now Mississippi Code Annotated section 51-29-145 to 51-29-157 (1972)]. By the decree three drainage districts composed of lands in Clay and Chickasaw Counties were consolidated as one district, appellee herein. Appellee was granted “the power and authority of a drainage district organized and existing under the provisions of Chapter 195, Laws of Mississippi of 1912, as amended by Chapter 269, Laws of Mississippi of 1914, and laws amendatory thereof and supplemental thereto, being now Article 2, Chapter 7, Title 19 of the Mississippi Code of 1942” [now designated as Mississippi Code Annotated sections 51-29-1 to 51-29-165, and 51-33-91 to 51-33-97 (1972)]. By decree dated May 4. 1965 (as referred to in the decree of *190 March 7, 1967), the court approved plans and specifications filed by appellee district for the project which included improvements on the lands of appellants as well as easements and rights-of-way pertaining to said lands. The chancery court subsequently entered another decree dated March 7, 1967, authorizing the district to construct its drainage system in accordance with the previously approved plans and specifications. Necessary easements and rights-of-way “necessary therefor, within the county, as shown by the plans and specifications” were granted appellee by the decree. It is uncontroverted that notice by publication to interested parties (unnamed) and landowners was given as provided by applicable statutes prior to entry of each of the decrees respectively dated September 18, 1958, May 4, 1965, and March 7, 1967. The decrees carry with them, absent any evidence to the contrary, a presumption that such notices were given. Boundaries of the district included a portion of Chickasaw County, in which county appellants’ lands are situated even though appellants’ lands are situated outside the district. Proceedings to appropriate the easements across appellants’ lands were initiated by the district pursuant to Mississippi Code 1942 Annotated section 4692 (Supp.1972) [now Mississippi Code Annotated section 51-29-39 (1972)]. Other pertinent facts will be set forth in this opinion as they relate to the specific legal propositions being discussed.
I.
(a) The first proposition raised by appellants is to the effect that the trial court had no jurisdiction to hear this cause for the reason that the March 7, 1967 decree allegedly restricted the district’s powers to the area within the district. Our opinion is that the powers of the Chuquatonchee Consolidated Drainage District to condemn land were not limited to the land area within the district’s borders.
Under the statutory law existing on the date of the decree of creation of the appellee as a drainage district, appellee had the power to take land outside of its borders subject to court approval of its plans and specifications. As a district created subsequent to the enactment of Mississippi Code 1942 Annotated section 4606.5 (1956) [now Mississippi Code Annotated section 51-33-1 to 51-33-9 (1972)], appellee was clearly and specifically vested with the powers enumerated in section 4606.5, supra. One of those enumerated powers is to construct additional improvements outside district borders as set out in paragraph two, section (5) of 4606.5, supra [now Mississippi Code Annotated section 51-33-3 (e) (1972)].
Appellants urge that paragraph three of 4606.5 requires that all districts, whether or not in existence at the time of the enactment of 4606.5 of whether created subsequent to its enactment, must petition the chancery court in order to obtain the additional powers therein enumerated. Such an interpretation is not valid when 4606.5 is carefully analyzed. Clearly paragraph three is a method set out by the legislature by which the commissioners of districts in existence prior to the enactment of section 4606.5, supra, are required to apprise interested landowners of the fact that they (the commissioners) are attempting by judicial process to become eligible to assert powers in excess of those granted to them at the time of the creation of their own districts. Paragraph four of 4606.5 in effect provides that districts created after the enactment “shall have all the powers vested by law in such district.”
Such a construction becomes clear in view of the language in 4606.5. Paragraph one of 4606.5 states that the purpose of the chapter (4606.5) “is to confer certain additional powers” (those delineated in paragraph two, subsections (1) through (6)) [now Mississippi Code Annotated section 51-33-3 (1972)] on two categories of drainage districts. The first category of such districts to be conferred the additional powers is those “already created.” Under paragraph three of section 4606.5 [now *191 Mississippi Code Annotated section 51 — 33— 5 (1972)], those districts in the first category cannot assert or use such additional powers until the commissioners thereof file a “petition . . . requesting such additional powers” and proper notice is given to interested landowners.
Appellee district is, however, in the second category of districts referred to in paragraph one of 4606.5, “those to be created,” because it was organized in 1958, or after 1955, the year of passage of 4606.5, [now Mississippi Code Annotated sections 51-33-1 to 51-33-9 (1972)]. Thus, when created, appellee was vested with the additional powers delineated in paragraph two, subsection (1) through subsection (6) without filing a “petition in the chancery court requesting such additional powers.”
A district organized after 1955 comes within the purview of paragraph four of 4606.5 [now Mississippi Code Annotated section 51-33-7 (1972)]. As stated in the concluding clause thereof, “after organization such district shall have all the powers vested by law in such district.” The first clause of paragraph four of 4606.5 [now Mississippi Code Annotated section 51 — 33— 7 (1972)] clearly includes appellee because its area was at the time of enactment of section 4606.5 “not presently within the boundaries of and existing drainage district.” (Emphasis added.) Its area was within the boundaries of multiple districts (later to become within the boundaries of appellee organized after 1955) rather than within the boundaries of “an” (singular) or one district “already created.”
The legislature obviously intended that the second category of district referred to in paragraph one of 4606.5, those to be created after enactment of 4606.5, after organization, shall (without petitioning the chancery court) “have all the powers vested by law” including those powers described in subsections (1) through (6) of paragraph two of 4606.5 [now Mississippi Code Annotated section 51-33-3 (a) through (f) (1972)]. These include the power to: “acquire lands, easements . impoundment of waters, . construct . . . such works of improvement ... as are needed . ” and “ . . . construct additional needed works of improvement outside their boundaries . . . .” (Emphasis added.) We are mindful that paragraph five of 4606.5, supra [now Mississippi Code Annotated section 51-33-9 (1972)], says the act is “to be given a broad construction to the end that those purposes” set forth therein may be carried out.
Also pertinent is Mississippi Code 1942 Annotated section 4606.1 (Supp.1972) [now Mississippi Code Annotated section 51 — 33— 11 (1972)], wherein it is stated that the powers granted under section 4606.5, supra, are expanded in order to permit districts created under section 4606.5 and those modified by section 4606.5 to exercise certain additional powers such as to impound, divert, and distribute waters. Likewise, Mississippi Code 1942 Annotated sections 4692, supra, and 4694 (1956) [now Mississippi Code Annotated sections 51-29-39, 51-29-43 (1972)] are pertinent.
Upon its creation appellee also became vested with all powers within the purview of Mississippi Code 1942 Annotated section 4752 (1956) [now Mississippi Code Annotated section 51-29-1 (1972)]. That same section states that all provisions of Chapter 7 (the drainage district chapter), whether in Article 2 or not, are applicable to districts created under Article 2, unless in conflict therewith. Although the subsequent decree of March 7, 1967 stated that certain particular improvements within the borders of the district were approved, the decree did not and indeed could not circumscribe any statutory powers then in existence by virtue of sections 4606.5, 4606.1, 4692, supra, and all other pertinent statutory provisions. The approval by the March 7, 1967 decree of action taken by the appellee district in accordance with the plans approved by the decree of May 4, 1965 was not a retraction of approval of the other specified improvements set out in *192 the plan. It was simply specific approval of the action taken in relation to the assessment of the lands related to the particular action taken, and specific approval of improvements to be made, i. e., construction of dams and impoundment of waters within the district. This approval decree in 1967 did not relate to appellants’ land. The complete plan approved in 1965, which was also appended to the pleadings again in 1967, did however contain specifications, et cetera, for improvements on appellants’ land. Therein is the authority or approval by the court needed for the appellee district to go outside of its borders and take appellants’ land. In summary, it can be said that the district was not effectively restricted by court decree, in view of applicable statutes, to operate only within its own borders. This does not mean that the district could have exercised its power had it not obtained approval of the plan in May 1965. Clearly, by sovereign grant as provided by state laws in effect when the district was organized in 1958, together with other applicable statutes (amendatory and supplemental) enacted since 1958, appellee (after its plans were court approved) had the right to condemn appellants’ lands when the lower court entered the decree appealed from.
(b) Appellants also contend that even if the district had authority to take the land outside its borders, in the present situation the taking was ineffective because appellants, the landowners, had never received any process of any kind “apprising or warning them that their land was a part of any proposed watershed plan, or might be sought to be taken by District in some court proceeding.”
Appellants’ argument in this connection is without merit. The record indicates notice was given by publication pursuant to the statutory law applicable to both the hearing for the creation of the district and the hearing for the approval of the plan, i. e., Mississippi Code 1942 Annotated section 4752-01 to 4752-07 (1956) [now Mississippi Code Annotated section 51-29-145 to 51-29-157 (1972)] and Mississippi Code 1942 Annotated section 4689 (Supp.1972) [now Mississippi Code Annotated section 51-29-29 to 51-29-33 (1972)].
Appellants’ land lies in Chickasaw County, as does a portion of the district. Process by publication was notice to all interested landowners and persons in Chickasaw County, including the appellants, not just to those landowners having land within the borders of the district. Appellants, upon the record before us, were not shown to have been denied due process as to notice or otherwise. Cases cited by appellants are not authority here because they relate to factual situations not analogous to the instant case. In the instant case, at the time the decree appealed from was rendered, appellants in their posture were without status to challenge the jurisdiction as they sought to do on the grounds, of lack of proper notice or due process.
Appellants here are very much in the position of those who own land outside a municipality and, at the time such municipality was being created, received no direct notice or personal service of process telling them that their property might later be condemned by the proposed municipality. Subsequently the municipality may, under Mississippi Code 1942 Annotated section 3374 — 128 (Supp.1972) [now Mississippi Code Annotated section 21-37-47 (1972)], condemn such property with no more notice or process than that given the appellants here.
II.
Appellants argue that the court erred in admitting the testimony of witnesses Keeton and Hayward because their testimony was based upon hearsay. We find no merit in these contentions.
Mr. Keeton, as the record discloses, was thoroughly familiar with the map and survey in question. He had performed duties which would necessarily qualify him as a *193 proper source of knowledge in relation to the foundation upon which the map and survey were constructed.
In regard to Mr. Hayward’s testimony, the record reveals that although he may not have pushed the pencil that made the marks, he was without a doubt in control of the project. He was engrossed in the details emanating from the work product of his subordinates and the other contributors of information to the extent that his testimony could in fact be considered the most reliable source of information' available.
■ Both Mr. Keeton and Mr. Hayward testified to the veracity of information which they had compiled and of which they had otherwise procured by participating with others working in this regard. They were not testifying merely to what others had said or had exclusively prepared. Crawford v. City of Meridian, 186 So.2d 250 (Miss.1966). In such matters, the trial court may exercise sound discretion as to admission of testimony. King v. State, 251 Miss. 161, 168 So.2d 637 (1964).
III.
Appellants make the assertion that the court awarded them inadequate damages and also erred by its refusal to sustain the request for a finding of fact. The thrust of their proposition is that the court should not have been guided by the “before and after” value as its guide in awarding damages. Further, appellants state that the court should have divided its award into damages according to the three specific areas of land designated as the permanently flooded land, the temporarily flooded land, and the work area or dam area land.
As to the issue of the chancellor’s refusal to specifically find the amount of damages separately for the three separate portions of property taken, to do so is unnecessary. The proper test for determining damages, as used by the chancellor in this case, is the “before and after” method. Mississippi State Highway Comm’n v. McArn, 246 So.2d 512 (Miss.1971). Therefore, no purpose would be served by designating the individual amount of damages for each and every portion of the property taken. His award of $26,100 was in excess of that indicated by appellee’s testimony and was less than that indicated by testimony of appellants’ witnesses. He, as a trier of facts, was not bound to accept the exact figures given by any particular expert. Mississippi State Highway Comm’n v Terry, 288 So.2d 465 (Miss.1974).
A careful review of the record before us reveals that the special chancellor consistently applied correct legal principles to the facts presented. Nothing in the record shows that he was manifestly wrong or that his decision should be reversed.
Affirmed.
RODGERS, P. J., and INZER, SMITH and ROBERTSON, JTJ., concur.