723 So.2d 1231 (1998)
Thomas Edward WILLIAMSON (also known as Thomas E. Williamson) and Wife, Brenda E. Williamson, Appellants,
v.
LOWNDES COUNTY, Mississippi, Appellee.
No. 96-CA-01097 COA
Court of Appeals of Mississippi.
November 24, 1998.
*1232 Gary Goodwin, Columbus, Attorney for Appellants.
Douglas Dalrymple, Columbus, Attorney for Appellee.
EN BANC.
McMILLIN, P.J., for the Court:
¶ 1. This is an appeal from a judgment entered in the Special Court of Eminent Domain of Lowndes County. The appellants are the property owners who find themselves aggrieved by the amount of compensation permitted them for the acquisition of a two and half acre tract by Lowndes County for public road purposes. We conclude that the evidence of value presented by the condemning authority was insufficient as a matter of law to permit the jury to reach a reasoned conclusion as to the value of the property at the critical date dictated by law. This conclusion requires us to reverse and remand for further proceedings.
¶ 2. Lowndes County commenced this proceeding in January 1995. The only evidence of value presented by the county in its case-in-chief was the testimony of Janice Holley, a contract appraiser who had completed her appraisal work on the property in March 1993. Based on her evaluation of the property, she offered the opinion that the damages accruing to the property owners by virtue of this partial acquisition from a larger plot was $7,586. The property owners presented evidence that the proper measure of damages for the acquisition was over $100,000. The jury returned a verdict setting just compensation for the taking at $23,679.
¶ 3. The appellants' primary complaint with the county's evidence is that it was, on its face, so untimely as to have essentially no probative value. In cases of eminent domain, the burden of presenting competent evidence of fair value of the property being acquired rests with the condemning authority. Ellis v. Mississippi State Highway Comm'n, 487 So.2d 1339, 1342 (Miss.1986). If the authority fails to present competent evidence of value, then the acquisition of title to the property cannot occur. Id. Evidence of value must, by statute, relate to a particular point in time  namely, the date of filing of the complaint commencing the acquisition process. "Evidence of fair market value shall be established as of the date of the filing of the complaint." Miss. Code Ann. 11-27-19 (Supp.1998).
¶ 4. The only evidence presented by Lowndes County in this case consisted of one appraiser who completed her work almost two years prior to the date suit was filed. No effort was made by the condemning authority to have this appraiser or some other expert update that appraisal work to determine what, if any, fluctuations had occurred in the property value in the nearly two year period that followed. By the appraiser's own *1233 testimony, her outdated figures pertaining to value could not possibly have accurately reflected the valuation on the critical date demanded by the statute. When asked if she had updated her analysis to consider any changes in value in the intervening two year period, she said, "We were not asked to update the appraisals." Later, on redirect, the county's attorney, in an attempt to rehabilitate the appraiser's testimony, elicited this exchange:
Q. Miss Holley, in your opinion has there been any substantial or significant increase or decrease in property values in this area between March of ninety-three and January of ninety-five?
A. Um  we have seen property values increase over time. Uh  saying significant, I  that's a relative term  uh  but property values in Lowndes County have increased.

Q. They haven't doubled have they or have they?
A. No.
¶ 5. Thus, viewing the county's evidence in the light most favorable to the verdict, we can conclude only that the value of the appellants' property had, in fact, increased since her earlier appraisal work and the only thing known with any certainty is that the increase had not caused the property value to double. Certainly, it ought to be readily apparent that this evidence does not begin to approach the measure of certainty that the statute and case law requires. Writing on a somewhat related issue, the Mississippi Supreme Court noted, in the case of Pearl River Valley Water Supply District v. Wood, that the determination of just compensation when a partial taking occurs involves a finding of "before and after" values of the owners' remaining property and "[i]t is the value of the land immediately before [the date of filing suit] which the statute contemplates will constitute the `before the taking' computation." Pearl River Valley Water Supply Dist. v. Wood, 252 Miss. 580, 595, 172 So.2d 196, 203 (1965). The court went on to say that
[i]t is apparent that even the most liberal interpretation of the word `immediately' (before the taking) cannot be construed to mean March 19, 1959, some three years prior to the date the eminent domain suit was actually filed, which in essence and effect is what appellant contends the word `immediately' means.
Id. at 206.
¶ 6. We find the failure of Lowndes County to present evidence of value bearing some reasonable relation to the actual date that suit was commenced fatal to this verdict. Neither do we find the fact that the property owners proceeded to present their own evidence of value constitutes a waiver of this fundamental failure in the condemning authority's case. Though the jury did return a verdict substantially in excess of that testified to by the county's only expert witness, the verdict nevertheless reflected a substantial discount from the owners' evidence of value. While it is true that the jury is the ultimate fact-finder in regard to valuation in eminent domain proceedings (See State Highway Comm'n of Mississippi v. Warren, 530 So.2d 704, 707 (Miss.1988)), the fact remains that the jury's findings must be based upon competent evidence. In this case, the jury evidently believed that the property owners' evidence of value was substantially inflated. But, because it had before it no competent evidence of a lesser value to guide its deliberations in reducing the owners' inflated demands, the jury was left to nothing but its own speculative analysis to arrive at a properly discounted figure to represent true value. A verdict based upon such speculation cannot be permitted to stand.
¶ 7. We are, thus, compelled to conclude that this judgment must be reversed and remanded for further proceedings to determine the proper amount of compensation due the appealing property owners  a proceeding in which the county must present competent evidence of the value of the property being acquired as of the date this suit was commenced.
¶ 8. THE JUDGMENT OF THE LOWNDES COUNTY SPECIAL COURT OF EMINENT DOMAIN IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL *1234 ARE ASSESSED TO THE APPELLEE.
BRIDGES, C.J., THOMAS, P.J., COLEMAN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.
HINKEBEIN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND HERRING, JJ.
HINKEBEIN, J., DISSENTING:
¶ 9. Because I feel that the majority gives inadequate recognition to the ambiguity which is inherent in real estate appraisals such as this and unduly withholds trust in the jury's ability to nevertheless arrive at an equitable award, I respectfully dissent. In my view, a more detailed examination of the proceedings below will both support this conclusion and aid in the analysis.
¶ 10. On January 10, 1995, Lowndes County filed an application for immediate possession of the Williamsons' land pursuant to § 11-27-81(d) of the Mississippi Code. This "quick take" petition, which described the five rural tracts involved and incorporated associated plats, was followed in March of the same year by a similarly descriptive order granting title to the county. Then in September 1996, the county filed a statement of values with the court. This document characterized the highest and best use of the property as a combination of single family residential and farmland while listing the total pre-condemnation value at $654, 531 and the post-condemnation value at $646, 945, leaving damages for the portions taken at $7,586.
¶ 11. During the jury trial that followed, Janice Holley, an appraiser and former employee of J.D. Jordan and Co., testified that in March of 1993 while still in the company's employ, she had examined the tracts at the county's behest. One by one, she described the size of each parcel and assessed the highest and best use of the acreage therein. Holley testified regarding comparable sales of several similarly sized and situated parcels in the area. It was on this data that she had based her opinions as reflected by the statement of values. See Howell v. State Highway Comm'n of Mississippi, 573 So.2d 754, 757 (Miss.1990) (requiring condemner to determine value of property based on comparable, although not identical sales).
¶ 12. In turn, Brenda Williamson testified that she and her husband had purchased 72 acres of the property in 1969 and after establishing a residence there, acquired additional parcels of varying size throughout the years to follow. Based on a combination of Mrs. Williamson's own knowledge of construction and mortgage loans gained while working in a local bank's loan department and inquiries with the developers of two nearby subdivisions, she recounted the figures contained within her own statement of values. Mrs. Williamson claimed a total before-condemnation value of $835,440 and a total after-condemnation value of $696,725, leaving $138,715 in compensation due. The gulf between these figures and those described by Holley may primarily be attributed to Williamson's theory that the affected frontage, to which she attached a pre-condemnation value more than double that cited by Holley, had lost its potential for residential use thereby causing its value to plummet. Mrs. Williamson also described nearly $10,525 in damages to water/sewage systems serving the associated rental properties as well as $214 in necessary fence repairs and the destruction of numerous ornamental trees. Moreover, based only on a"feeling," Mrs. Williamson claimed that the county had actually taken more acreage than originally envisioned.
¶ 13. In their appeal, the Williamsons argue that in light of an undisputed rise in area property values during the interim, Holley's failure to re-evaluate her appraisal during the two and one-half years leading up to trial should have prevented the admission of her testimony. In essence, the couple characterizes Holley's opinions as incompetent because she was unfamiliar with the land as it existed at the time of taking. On a related note, the Williamsons also argue that because the condemner relied exclusively on this stale appraisal at trial, the county necessarily failed to carry its burden of proof described by § 11-27-19. Miss.Code Ann. § 11-27-19 (Supp.1997). According to the couple, this absence of proof necessarily left jurors "to speculate as to the value of the property as *1235 of the date the petition was filed." In response, the county contends very simply that any error was, at most, harmless and directs our attention toward the jury's award while writing, "what was credible here is the fact than an independent appraiser arrived at a figure and the jury chose to enhance it." Unlike the majority, I agree with the county's conclusion.
¶ 14. The Williamsons' initial claim, that Holley's allegedly uninformed testimony ought to have been excluded, is clearly without merit. Though the competency of experts is certainly a question of law to be addressed to the trial judge, the Mississippi Supreme Court is often reluctant to reverse an award based on the admission of questionable opinions. For example, in one instance a witness offered her opinion as to land values while simultaneously admitting that the figures were without "any reasonable basis." Miss. State Highway Comm'n v. Magee, 186 So.2d 238, 239 (Miss.1966). Nevertheless, the court found no error. Magee, 186 So.2d at 239. Holley's professional background and familiarity with these five tracts should certainly qualify the case sub judice for similar treatment. Moreover, the court's repose is especially evident where the ultimate award indicates that jurors recognized the weaknesses in the evidence. See Miss. State Highway Comm'n v. Reeves, 257 So.2d 527, 528 (Miss.1972) (citing Mississippi State Highway Commission v. Strong, 240 Miss. 756, 765, 129 So.2d 349, 352 (1961), wherein our supreme court wrote: "The `before and after' rule ... does not require that each witness must give a before and after valuation of the property...."). This jury, by returning an award 200% greater than the damages detailed by Holley, did precisely that.
¶ 15. As for the mandate of § 11-27-19, the condemner indeed has the burden of proving the value of the subject property. Ellis v. Mississippi State Highway Comm'n, 487 So.2d 1339, 1342 (Miss.1986). Therefore, the governmental unit must go forward with enough evidence as to the damages suffered by the landowner to make out a prima facie case. Ellis, 487 So.2d at 1342. Failure to offer such proof requires dismissal of the proceedings. Id. However, because the record shows that Holley, despite an admitted awareness of rising land values in surrounding areas, held steadfastly to her previously ascertained figures when questioned regarding the targeted parcels, I believe her testimony fulfilled the statute's evidentiary requirement. Through her, the county presented what it considered to be the value of the property as of the date of filing. It was the Williamsons' responsibility to overcome this evidence via cross-examination and/or their own assessment. After all, as the Mississippi Supreme Court has heretofore recognized, real estate appraisals often provide an uncertain basis for jury awards in eminent domain cases. Mississippi State Highway Comm'n v. Terry, 288 So.2d 465, 466 (Miss.1974). But because no alternative mode of proof has yet been devised, the amount of the award remains a factual question to be left to jurors. Terry, 288 So.2d at 466. As such, the jury is not bound to accept the exact figures given by any of the experts and to fix an award from conflicting testimony is well within its province. Id. See also Miss. State Highway Comm'n, v. Treas, 197 Miss. 670, 675, 20 So.2d 475 (1945) (finding sufficient evidence to support an award of $5,000 where witnesses presented figures ranging from $2,000 to $15,000). In this instance, the jury considered the credibility and weight of Holley's testimony in light of the figures offered by the Williamsons. As such, I am unable to conclude that the resulting award is not supported by the evidence. I would affirm the judgment of the lower court.
DIAZ AND HERRING, JJ., JOIN THIS SEPARATE WRITTEN OPINION.