*965 JAMES, J.,
dissenting:
¶ 24. I respectfully dissent from the majority opinion. Mississippi Rule of Evidence 403 states: “Although relevant, evidence maybe excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.”
¶ 25. The trial court has broad discretion to determine what evidence is admissible under Rule 403. Batiste v. State, 121 So.3d 808, 863 (¶ 143) (Miss.2013). We have previously held that “[wjhere a trial court determines that potentially prejudicial evidence possesses significant probative value, it is within that court’s sound discretion whether or not to admit such evidence[.]” Jenkins v. State, 75 So.3d 49, 54 (¶ 15) (Miss.Ct.App.2011). We have further stated that “we do not ‘engage anew in the [Rule] 403 balancing process.’ Our review is limited to determining ‘whether the trial court abused its discretion in weighing the factors and admitting or excluding the evidence.’” Griffin v. McKenney, 877 So.2d 425, 438 (¶ 43) (Miss.Ct.App.2003). The majority opinion states that the trial court did not find that the probative value was “substantially outweighed” by prejudice. However, the trial court held:
To allow the Defendants to impeach Plaintiffs appraiser with old appraisal data performed a year and a half before the date of the filing of the complaint and introduce a value that was assigned well before the filing could be highly prejudicial to the Plaintiff. Any probative value would be outweighed by that prejudicial effect.
¶ 26. The initial appraisal report indicated that its effective date was February 2, 2009, and MTC filed its complaint on August 3, 2010, well after the effective date. In the interim, MTC and the landowners attempted to reach a settlement through negotiations; the first appraisal for $1,912,125 was the first offer by MTC to the landowners. After going through the ebb and flow of settlement negotiation without reaching an agreement, MTC filed suit to commence eminent-domain proceedings. The fair market value is determined at the time of the taking, which is initiated by the filing of the complaint. Williamson v. Lowndes Cnty., 723 So.2d 1231, 1232 (¶ 3) (Miss.Ct.App.1998). This Court has further stated that “[ejvidence of value must, by statute, relate to a particular point in time — namely, the date of filing of the complaint commencing the acquisition process.” Id.
¶ 27. Further, “[w]hen a portion of a larger tract of land is taken for public use, the owner is entitled to be awarded the difference between the fair market value of the entire tract immediately before the taking and the fair market value of the remaining tract immediately after the taking.” Miss. Transp. Comm’n v. Fires, 693 So.2d 917, 920 (Miss.1997). A significant period of time passed between the first appraisal and the filing of the complaint, and it is reasonable to conclude that the February 2009 appraisal was not “immediately” before the taking.
¶ 28. The landowners argue that the current case law supports the admissibility of the initial appraisal report completed in February 2009. The landowners also contend that cases from several jurisdictions, including the United States Court of Appeals for the Fifth Circuit, support the admission of the appraisal report. The exclusion of the report, the landowners assert, created a mechanism that the State could use to “strong arm” property owners. The landowners also suggest that the exclusion of the report also “hindered the *966 intent and purpose” of the real-property-acquisition laws.
¶ 29. Mississippi Code Annotated section 43-37-3(1) (Supp.2014) states:
(a) Every reasonable effort shall be made to acquire expeditiously real property by negotiation.
(b) Real property shall be appraised before the initiation of negotiations, except that the acquiring person, agency or other entity may adopt a procedure in compliance with federal regulations to waive the appraisal in cases involving the acquisition by sale or donation of property with a low fair market value.
[[Image here]]
(h) If an interest in real property is to be acquired by exercise of power of eminent domain, formal condemnation proceedings shall be instituted. The acquiring authority shall not intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property.
¶ 30. It is apparent from the record that MTC fulfilled its statutory obligations throughout the course of litigation. MTC used Milton’s initial appraisal as a starting point for entering negotiations, which the landowners rejected. Once negotiations failed, MTC followed proper procedure and filed a complaint to commence eminent-domain proceedings. There is no evidence of “coercive tactics” used during litigation.
¶ 31. The landowners argue that the exclusion of the appraisal report contradicts the “intent and purpose” of real-property-acquisition law. The Mississippi Supreme Court has held that when interpreting a statute:
[T]he first question a court should decide is whether the statute is ambiguous. If it is not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction. Whether the statute is ambiguous or not, the ultimate goal of this Court is to discern and give effect to the legislative intent.
Miss. Dep’t. of Transp. v. Allred, 928 So.2d 152, 154 (¶ 12) (Miss.2006). Section 43-37-3 is unambiguous and clearly enumerates the process of a taking under the statute. MTC did not deviate from this procedure during litigation.
¶ 32. One of the primary cases relied upon by the landowners is Morley v. Jackson Redevelopment Authority, 632 So.2d 1284 (Miss.1994). In Morley, the supreme court held that Rule 408 did not apply because a disputed claim did not arise until eminent-domain proceedings had begun. Morley, 632 So.2d at 1292. Rule 408 declares evidence of compromise and offers to compromise inadmissible to “prove liability for or invalidity of the claim or its amount.” M.R.E. 408. The supreme court further stated: “However, this does not dispose of the question of whether the appraisal on which the offer is based is inadmissible, since Rule 408 further provides that, ‘[t]his rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations.’ ” Morley, 632 So.2d at 1291-92. MTC argues, that the admission of the initial appraisal report would be in violation of Mississippi Rule of Evidence 408. Further, the court stated in Morley: “In combination with the restrictions placed on the owners’ prospects for securing other expert testimony through its pre-trial order, this error became even more prejudicial to the owners.” Morley, 632 So.2d at 1292. The exclusion of the higher appraisal in conjunction with other factors made the exclusion more prejudicial to the landowners. Here, however, no other'restrictions were placed on the landowners.
*967 ¶ 33. The majority opinion asserts that Morley supports the position that the initial appraisal is admissible and does not “substantially outweigh” the prejudice of the appraisal. However, the trial court discussed the requirements of Rule 403 in detail and held that the appraisal is prejudicial and may cause confusion. Further, in Morley, a few months passed between the final appraisal and the filing of the complaint to commence eminent-domain proceedings. This is in contrast to the present case. Here, eighteen months passed between the time the appraisal report took effect and when the complaint was filed. The trial court held that too much time passed between the initial appraisal and the filing of the complaint Also, there were two different appraisals performed by two different appraisers. In the case at bar, Milton performed both appraisals.. Due to the nature of fluctuations in property value and the economic climate at the time, it cannot be assumed that the fair market value would have been at or close to the same level at the time of the initial appraisal.
¶ 34. The other case relied upon by the landowners is United States v. 320.0 Acres of Land, 605 F.2d 762 (5th Cir.1979). In that case, land was secured for the Everglades National Park, and there were fifty-two tracts of land involved in the taking. Id. Also, comparable sales were excluded from evidence, which severely limited the landowners’ ability to present evidence at trial. Id. at 772-73.
¶ 35. As with Morley, the court in 820 Acres highlighted several procedural flaws throughout the process. Id. In 320 Acres, there is significant discussion about the scope-of-the-project rule and the highest- and-best-use rule. Id. at 781. The trial court also excluded the landowners’ demonstrative evidence portraying the property as something other than uninhabitable land. Id. at 825-26. There were multiple procedural flaws in both cases that made the exclusion of previous appraisals more prejudicial.
¶ 36. The majority opinion also states that the exclusion of the prior appraisal adversely affected a substantial right of the landowners. However, the prior appraisal did not substantially affect the rights of the landowners because the appraisal was too remote in time. The supreme court has stated: “This Court has a long-standing history of not disturbing jury verdicts in eminent domain proceedings[.]” Trowbridge Partners v. Miss. Transp. Comm’n, 954 So.2d 935, 944 (¶ 24) (Miss.2007). Therefore, I would affirm the decision of the trial court.
IRVING, P.J., JOINS THIS OPINION.